**PETERSON BUILDERS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1406C.**

United States Claims Court.

Sept. 22, 1992.

Maurice J. Mountain, McLean, Va., attorney of record for plaintiff. Barton, Mountain & Tolle, of counsel.

George M. Beasley, III, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, Sharon Hershkowitz, Dept. of Navy, and Robert E. Lieblich, Naval Sea Systems Command, of counsel.

## OPINION

FUTEY, Judge.

This matter is before the court on defendant's motion for reconsideration of the court's Opinion filed May 5, 1992. In that Opinion, the court dismissed plaintiff's counts II, III, and V, and denied defendant's motion to dismiss counts I and IV. Defendant now asks the court to reconsider and dismiss count IV on jurisdictional grounds. In the alternative, defendant requests that the court strike certain language in the earlier Opinion.[1] Plaintiff, Peterson Builders Inc. (PBI), responds that the court's Opinion should be left undisturbed.

### Background

Plaintiff entered into a cost-plus-incentive-fee Contract No. N00024–82–2121 with Naval Sea Systems Command on June 29, 1982. The contract covered the design and construction of MCM–1, a wooden hulled minesweeper, the first of a line of minesweepers. In addition, plaintiff received a firm-fixed-price (FFP) Contract No. N00024–84–C–2077 on December 23, 1983, for the construction of MCM–3 and MCM–5. Subsequently, PBI received an FFP contract for MCM–6 and 8, Contract No. N00024–86–C–2190, on August 20, 1986. On May 1, 1990, PBI submitted a certified claim to the contracting officer (CO) with respect to the MCM–1 contract for $13,746,-045.00. On June 6, 1990, PBI submitted certified claims for MCM–3 and 5 and MCM–6 and 8 for $12,059,660.00 and $2,861,475.00, respectively. These claims sought compensation for thousands of individual alleged constructive changes, including engineering change notices issued by PBI as the lead ship contractor (hereinafter referred to as change notices). Plaintiff filed a complaint pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–13 (1988), on September 5, 1991, and defendant moved for partial dismissal on January 14, 1992.

In the motion for reconsideration, defendant avers that the 18–month time bar of 10 U.S.C. § 2405 (1988) operates to bar Count IV on jurisdictional grounds.[2] 10 U.S.C. § 2405 (1988) states:

(a) The Secretary of a military department may not adjust any price under a

1. Defendant also requests a hearing on the issue of the time bar under 10 U.S.C. § 2405 (1988). Since this is an issue of law for the court to decide, further argument on the issue is unnecessary.

2. *See Do–Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 639 (Fed.Cir.1989), (holding that a time bar on presentation of the claim to the contracting officer is not a jurisdictional bar on the court's ability to review the case on the merits. Rather, the time bar is an affirmative defense for failure to state a claim upon which relief can be granted).

shipbuilding contract ... for an amount set forth in a claim ... *arising out of events* occurring more than 18 months before the submission of the claim, request, or demand.

Defendant contended that the issuance date of the change notice should be the event that triggered the statute of limitations. In its earlier Opinion, the court declined to accept this contention and found that, since the design was unstable, this date would start the accrual of the statute before "it was finally clear that a specific change would actually be incorporated into the design." Plaintiff, alternatively, argued that the event should be when the "impact" of the change was quantified. In response to this argument the court found "[s]uch an interpretation ... would leave the Navy open to liability for many years, exactly the situation Congress sought to curtail."

 Thus, the court rejected both defendant's and plaintiff's contentions as to the construction of "events" under 10 U.S.C. § 2405. Instead, the court took guidance[3] from comments to the Navy's interim regulations and found that the term "events" occurs at the time that work inconsistent with contract requirements is undertaken. Navy Acquisition Procedures Supplement; Adjustment to Prices Under Shipbuilding Contracts, Fed.Reg. 63664, 63670 (1991). The burden of proving when this occurs rests with the contractor. Accordingly, the court found that PBI must prove when work inconsistent with contract requirements occurred. The court concluded that the "issue would benefit from further ventilation of facts."

### Discussion

#### I. Interim Regulations

Defendant maintains that the court's reliance on certain interim regulations was misplaced. Defendant avers that the change notices were actually issued by the government not PBI, the follow ship contractor. Under this interpretation, differ-

ent comments to the interim regulations would apply and the date of issuance of a design change could be construed as the event that begins the running of the 18–month statute of limitation. Navy Acquisition Procedures Supplement; Adjustments to Prices Under Shipbuilding Contracts, Fed.Reg. 63664, 63666 (1991). The interim comments that this court relied upon provide:

> ii. *Correction of defective government property or information without government direction.* ... Contractors are currently required to provide notice of a change whenever they believe the Government is responsible for changing contract requirements. This may arise not only as a result of Government actions, inactions or conduct but also as a result of contractor or third party conduct-therefore, the definition of "events" includes "occurrences"—*which are not tied to Government conduct* ... the 18–month period will begin only when the contractor has undertaken work that is not consistent with contract requirements. Contractors reasonably should know and be held responsible when they undertake work that is not consistent with contract requirements.

Navy Acquisition Procedures Supplement; Adjustments to Prices Under Shipbuilding Contracts, Fed.Reg. 63664, 63670 (1991). [Emphasis added.]

Thus, if the change notices were issued by the government, this section would clearly be inapplicable. Nonetheless, it is evident that the change notices were actually issued by PBI the lead ship contractor (lead ship contractor). Therefore, in support of its theory, defendant seeks to distinguish the *lead ship* contractor for the MCM–1 ship from PBI, the *follow ship* contractor for the rest of the MCM series. Not only does defendant argue that they are two distinct contractors, defendant also maintains that the lead ship contractor is an agent of the government. The distinction rests upon a finding by this court of an

---

**3.** While the court took guidance from the comments to the interim regulations, they are in no way binding upon the court.

agency relationship between the lead ship contractor and the government. Hence, according to defendant, an issuance by the lead ship contractor, of a design change, or engineering change notice, is an issuance of a change notice by an agent of the government. As such it would be tantamount to an issuance of a change notice by the government.

■ Such an assertion is unsupported. Defendant has cited to no provision of the contract that would provide for an agency relationship between the lead ship contractor and the government. A finding of an agency relationship between the government and contractor is unusual absent extraordinary contract provisions. *See United States v. Johnson Controls, Inc.* 713 F.2d 1541, 1552 (Fed.Cir.1983). Moreover, it is important to note at the outset that this Opinion deals with constructive changes: "work beyond that required by the contract, but without a formal change order." *Calfon Constr. Inc. v. United States,* 18 Cl.Ct. 426, 434 (1989). PBI is not the agent of the government and the change notice was not issued by the government. Accordingly, the interim comment covering constructive change notices issued by the contractor was the correct section for this court to apply.

## II. Rescission of Change Notices

■ Defendant also questions the court's reliance on the instability of the design. Defendant asserts that this court rejected the issuance date of the change notice, as the event that triggers the statute of limitations, because many change notices were later rescinded. Defendant notes that even rescinded changes can be the source of a claim if work has been performed in preparation for the change.

Defendant, nonetheless, misconstrues the court's earlier Opinion. The court did not find that rescinded change notices could not be the source of a claim. The court is mindful of the fact that a claim can be made, even for changes that have been rescinded, if costs have been incurred in preparation. This is not contrary to the earlier Opinion. Such work done in prepa-

ration for the change notice would be "work that is not consistent with contract requirements." The court's reliance on the fact that many change notices were rescinded is important only in that, where *no work* was ever performed pursuant to the change notice, no claim would ever arise. Thus, the use of the issuance date would trigger the statute for a claim that might never arise.

Defendant alternatively requests that if the court declines to reconsider its opinion, it should strike the language in the Opinion referring to the Navy's interim comments and design changes. The court, however, reaffirms its earlier Opinion, including the references to the interim comments and design changes. Thus, the need to strike any language in the earlier Opinion is obviated.

■ Defendant also asks this court to strike portions of plaintiff's opposition filed June 12, 1992. In the alternative, defendant asks that it be allowed to respond. The crux of defendant's argument is that plaintiff's opposition is really a thinly veiled motion for reconsideration. The court notes that plaintiff specifically submits, in its opposition, that the court's ruling "should be left undisturbed." Moreover, to the extent plaintiff's opposition could be construed as a motion for reconsideration, it is untimely and will not be considered by the court. Therefore, defendant's motion is moot.

Accordingly, defendant's motion for reconsideration, and in the alternative to strike language, is hereby denied. Defendant's motion to strike plaintiff's opposition or in the alternative to respond is moot. Although defendant's motions are denied, the court takes this opportunity to clarify its earlier holding on the time bar issue.

## III. Construction of the term "events"

■ The legislative history of 10 U.S.C. § 2405 leaves few clues as to the proper interpretation of the term "events." In 1977, Congress was alerted to shipbuilder's problems with government contracts when the House Committee on Appropriations

held hearings on the shipbuilding industry. Shipbuilders alleged that "the Government caused the shipbuilders to perform substantial amounts of extra work over and above contract requirements and that this in turn entitled the shipbuilders to contract price adjustments in the amounts claimed." REPORT OF THE COMMITTEE ON APPROPRIATIONS, H.R. DOC. No. 1317, 96th Cong.2d Sess. (1980). Many claims were eventually brought to recover for the extra work performed. In light of this problem, a one time settlement of these claims was authorized in the late 70's to wipe the slate clean with the understanding—

> [T]hat the Navy and its shipbuilders would take the necessary steps to ensure that future contracts would be kept current so that a situation would not again develop where the Navy was faced with large claims years after the fact.

*Id.*

Nonetheless, by 1983, delays in shipbuilding claims still plagued the government and Congress commented:

> [L]ong delays in claims submissions often result in later delays in claims settlement. The inability to settle claims for long periods of time, sometime [sic] years, has led to such things as contractor financial problems, threatened and actual work stoppage, and hostile relations between Government and Contractor.

H.R.REP. No. 427, 98th Cong.1st Sess. (1983).

In 1984, as further concerns about these claims mounted, the Senate commented on documentation of these claims:

> [S]uch documentation should be adequate to commence a full and comprehensive analysis of the claim with as much specificity as the facts will permit and not consist only of opinions, conclusions, or judgmental assertions. The committee believes that a requirement for submission of supporting documentation is necessary for the government to be in a position to resolve claims expeditiously and fairly, and therefore such a requirement has been incorporated. *To date, the committee is not aware of any evidence that 18 months is not a sufficient time for contractors to assess the consequences of an event, assemble all pertinent documentation to support their claimed amount, and submit this documentation....*

S.REP. No. 500, 98th Cong.2d Sess. (1984). [Emphasis added.]

It is clear, then, that Congress intended to prevent large shipbuilding claims brought years after the fact. It is also apparent that, after full consideration, Congress did not find that 18 months was an insufficient amount of time to assemble supporting data on a claim.

At this juncture, then, this court must grapple with the proper definition of "events" under § 2405. The term "events" is plural and clearly must encompass more than one occurrence. Nonetheless, to lend certainty to the operation of the shipbuilding industry, the court must choose the one event, in the series, that begins the running of the 18–month statute for constructive changes. Defendant contends that the issuance date of the change notice is the event. This interpretation, however, could, in many cases, prove to be impractical. Where, as here, the design of a new ship is in flux, a design change might never be incorporated and no work ever begun after issuance of the notice. Only when work is begun in reliance on the change notice is there certainty, even if the change is later rescinded, that a claim can arise. The choice of the issuance date, moreover, allows the shipbuilder less time to support his claim and may result in poorer documentation of the claim. Proper documentation of the claim comports with the stated congressional intent that—

> "[S]uch documentation should be adequate to commence a full and comprehensive analysis of the claim ... [which is] necessary for the government to be in a position to resolve claims expeditiously and fairly."

S.REP. No. 500, 98th Cong.2d Sess. (1984). Therefore, the issuance date of the change notice cannot be the triggering event for the statute.

Plaintiff, on the other hand, urges the court to adopt the date when the impact of

the change is quantified as the event which triggers the statute of limitation. Yet, quantification of the impact would work an injustice on the government, forcing contract changes to be re-examined years after the occurrence, when personnel has changed and memories have dimmed. This interpretation moreover, directly conflicts with congressional intent to lower the number of "large claims after the fact." In addition, Congress specifically found that 18 months was "sufficient time for contractors to assess the consequences of an event, assemble all pertinent documentation to support their claimed amount, and submit this documentation." It makes little sense to allow shipbuilders time to quantify a claim and *then* to start the running of the 18-month statute, a time period Congress expressly gave shipbuilders to quantify their claims.

■ Alternatively, the use of the start of work inconsistent with contract requirements to trigger the statute works substantial justice for both the claimant and the government. Under this bright line test, the government need not worry about claims asserted years after the event. Claimants moreover, are given a year and a half from the start of work to submit a claim. If full quantification is impossible within that time period, then contractors may supplement their claims after submission, so long as the initial claim is put forth in good faith. *SMS Data Products Group, Inc. v. United States,* 19 Cl.Ct. 612, 615 (1990).

Notwithstanding this, plaintiff argues that this interpretation creates a hardship for the shipbuilding industry. This court's duty, however, is to interpret the statute from the plain language of the statute. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1536, 71 L.Ed.2d 748 (1982). When the language is unclear, then the court delves into the legislative history. *Carlson v. Secretary DHHS,* 23 Cl.Ct. 788, 791 (1991). Law-making is the province of the legislature and not the judiciary. Discussions over the inequity of the law as it exists should be addressed to that branch of government entrusted with the drafting of legislation, not to that branch whose endeavour is to interpret the law as it is written.

Although the interpretation of the term "events" under 10 U.S.C. § 2405 is a case of first impression for this court, it also is in accordance with previous interpretations on the accrual of 6-year statutes of limitations under the "all events" test. Pursuant to the "all events" test "a claim accrues when all events necessary to fix the Government's liability have occurred ... thus entitling the contractor to demand payment." *L.S.S. Leasing Corp. v. United States,* 695 F.2d 1359, 1365 (Fed.Cir.1982); *see also Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed. Cir.1988). The focus, therefore, should be on the point "of 'first accrual,'" when "claimant [can] bring suit alleging the breach." *Sankey v. United States,* 22 Cl. Ct. 743, 745 (1991), *aff'd,* 951 F.2d 1266 (Fed.Cir.1991) (citations omitted).

At the point that work inconsistent with contract requirements is begun, the claimant is then able to bring suit and the government is liable for the work performed. The liability is fixed in existence, if not in amount. Moreover, from that moment, contractors have 18 months to substantiate their claim. Congress specifically found that this was a sufficient amount of time. In addition, as noted earlier, claims put forth in good faith may be supplemented. *SMS* at 615. Therefore, accrual of the 18-month statute when work inconsistent with contract requirements occurs is in accordance with the "all events" test. This accrual date complies with congressional intent by giving contractors sufficient time to document claims while not delaying shipbuilding claims unnecessarily. Thus, it is the relevant event to trigger the statute of limitations for constructive changes under 10 U.S.C. § 2405.

For the foregoing reasons defendant's motion for reconsideration and motion to strike are denied. As noted earlier, defendant's motion to strike plaintiff's opposition or in the alternative to respond is moot. Further, there is no just reason for delay for the entry of judgment dismissing

counts II, III and V. RUSCC 54(b). A status conference concerning further proceedings will be scheduled by separate order of this court.